No. 16,997.

AETNA CASUALTY AND SURETY COMPANY ET AL.
*v.* INDUSTRIAL COMMISSION ET AL.
(255 P. [2d] 961)

Decided March 2, 1953.   Rehearing denied April 13, 1953.

Mr. JOHN P. BECK, for plaintiffs in error.

Mr. Duke W. Dunbar, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. Peter L. Dye, Assistant, for defendant in error Industrial Commission.

Mr. Gilbert L. McDonough, for defendant in error Roberts.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

This cause is presented here for review of a judgment of the district court affirming an award of the Industrial Commission made to claimant Roberts under the Workmen's Compensation Act. The sole question for determination is whether or not the accident, resulting in the injury to claimant, arose out of and in the course of his employment. He lost an eye as the result of being hit by a stray gunshot while pheasant hunting with some employees of a business customer. In other words, did this hunting trip have a direct and causal connection with his employment simply because such a claim is made?

We will herein refer to the surety company, plaintiff in error, as insurer; to the other parties as employer and claimant; and the Industrial Commission, one of the defendants in error, will be designated as the commission.

The referee's finding, adopted by the commission, was to the effect that claimant's injury arose out of and in the course of his employment, and the commission made an award requiring respondents to pay compensation to claimant at the rate of $28.00 per week on December 11, 1951 through January 9, 1952 on account of temporary total disability, and thereafter at the same rate for a period of 139 weeks for permanent partial disability, and for the payment of the necessary medical and physician and hospital expenses incurred within

six months from the date of the accident, not to exceed $1,000.00. In due course, in a judicial proceeding, the district court affirmed the award of the commission and its judgment is before us in this review.

Claimant is a resident of Denver and is employed as a paint salesman in Colorado and Wyoming, with the duties of promoting the sale of paints manufactured by his employer; to establish new dealers; and demonstrate newly developed techniques to painters. He was employed on salary and commission with an allowance for expenses for entertainment of dealers and painters to promote good will. On December 1, 1951, claimant went to Sterling, Colorado, and the pheasant hunting season being open, he hunted alone on that day and again on Sunday with a friend. On the next day, Monday, December 3, he called on the Platte Valley Lumber Company at Sterling and made an inventory of the merchandise in its paint store in the forenoon; had a quick lunch, and in the afternoon went pheasant hunting about twenty-five miles from Sterling with a yard boss and a truck driver for the same company. About two o'clock in the afternoon, while hunting with the yard boss and the truck driver in a field, without permission of the owner, claimant was hit in the right eye by a shot from the gun of the truck driver while the latter was shooting at a pheasant. This injury terminated the hunting expedition and claimant returned to Denver, where, after medical attention, the eye was removed.

There seems to be no dispute about the facts, and the posed question is, does the evidence support the finding and award of the commission and its affirmance, to the effect that at the time of the accident claimant was "performing service arising out of and in the course of his employment," and does the evidence support the award in that the injury was proximately caused by an accident within the course of his employment?

The first approach to the precise question is to determine whether the accident originated in a risk

peculiar to the employment. The burden of proving this question was upon claimant, not by attempting to establish what might have been a custom acquiesced in by his employer on other occasions, but by the facts of the present situation. The preponderance of the evidence must show that claimant was performing work connected with his job as hereinbefore outlined. It unquestionably appears that claimant was attracted to the area where he could engage in pheasant hunting for his own pleasure, because, when arriving in the area, he hunted one day alone; the next day, with a friend not at all connected with the activities of his business as a customer; and the third day, when the accident happened, he was not with the heads of the Lumber Company, but was with a yard boss and a truck driver. Even if it could be said that he was entertaining the parties with him on the hunt, it is undisputed that he provided nothing for their entertainment, no transportation, no guns, no ammunition, no hunting license, and did not provide a place to hunt, not even procuring the permission of the landowner where the accident happened, and made no expenditures whatever for the trip. He provided his own lunch and his hunting companions did likewise. There is nothing in the evidence to show that he was directed to provide a hunting trip for these particular individuals, or to participate in it, and in fact, his superiors knew nothing of his arrangement, which seemed to be one of his own selection and largely for his own pleasure. The circumstances indicate that claimant's interest in the hunting trip was to have companions, and not their entertainment. We do not believe that the elasticity of the Workmen's Compensation Act permits it to be stretched to cover the situation before us, where virtually the only supporting testimony on the question of whether claimant was injured while in the course of his employment, is his own statement to that effect. Any acquiescence in claimant's former activities of this sort by his employer, according to a letter introduced in

evidence, was approval of claimant's entertainment of good customers or good prospects, and did not include the entertainment of subordinate employees such as was the case here.

Claimant exposed himself to a risk common to all who are hunting in a group, and when he knew of this hazard, as he testified, he unnecessarily increased the risk of injury and cannot recover therefor. He was exposed to this hazard on the day before and it was a hazard to which he would have been "equally exposed apart from the employment." *Industrial Commission v. Anderson,* 69 Colo. 147, 169 Pac. 135. We see no obligation on the part of claimant to be at the place where he was injured or engaged in the thing he was doing at the time.

■ ■ It is apparent that the commission, in its attempt to find a basis for an award, was controlled largely by the fact that claimant had at other times entertained customers throughout his territory for which the employer had paid the expense; and further, found that for years claimant had hunted with the owners and employees of the Platte Valley Lumber Company with the employer's knowledge and it had paid for such trips. This does not provide a basis for an award in the present case, because the award must be based upon the facts of the case under consideration, and not on what had happened on other occasions. We find nothing in the evidence that discloses the assumption of the commission to the effect that claimant had ever hunted with the owners of the lumber company nor with its management. To come within the classification of "course of conduct," it must be shown that such conduct is such a continuous practice as to constitute a regular course of conduct. An occasional instance, such as is the case before us, does not establish such a custom, because the proof of such a custom must be clear and convincing as to duration. *Alden Sign Co. v. Roblee,* 121 Colo. 432, 217 P. (2d) 867. The conclusions of the com-

mission are not based on positive fact findings, and the finding that the accident arose out of and in the course of the employment is therefore a conclusion not supported by the evidence.

For the reasons herein indicated, the judgment is reversed and the cause remanded to the district court with directions to return the case to the Industrial Commission with instructions that it vacate its award to claimant and dismiss the claim.

Mr. Chief Justice Stone and Mr. Justice Moore dissent.

Mr. Justice Moore dissenting.

I respectfully dissent from the views expressed in the majority opinion in this case. The findings of the Industrial Commission upon material questions involved were as follows:

"The testimony shows that the claimant was a paint salesman for the respondent employer and that his territory included the town of Sterling, Colorado. The claimant was allowed the usual and ordinary expenses for his car, his hotels, and his meals, and was allowed reasonable expenses to entertain customers. On the Saturday preceding December 3, 1951, claimant went to Sterling, Colorado, for the purpose of calling on the trade and did, on the morning of December 3, 1951, call, on the Platte Valley Lumber Company, where he checked the Platte Valley Lumber Company's stock of paint with one Mr. Acre, who usually gave claimant orders for paint to restock the Platte Valley Lumber Company's paint inventory. On December 3, 1951, claimant worked with Mr. Acre in checking the inventory until about noon, when the claimant, Mr. Acre, and Mr. Luft, a truck driver and yardman for the Platte Valley Lumber Company, went on a pheasant hunting trip in the rural area near Sterling, and it was in the course of this

hunting trip that claimant lost the sight of his right eye by reason of a hunting accident.

"The Referee finds from the evidence that the claimant had on several occasions entertained different persons connected with the Platte Valley Lumber Company and other customers throughout his territory and that on each of these occasions the claimant had included the entertaining expense in his expense account, which had been paid by the respondent employer.

"The Referee further finds that while the vehicle furnished for the hunting expedition on December 3 was owned by one of the Platte Valley Lumber Company employes and that one of the Platte Valley Lumber Company employes selected the ranch on which the hunting was to be done, nevertheless the claimant, by engaging in said hunting trip, was in the course of his employment and furthering his employer's business by creating good will and friendship among his customers and the employes who had the authority to place orders with the claimant.

"The Referee further finds that the claimant's practice of hunting pheasants with Platte Valley Lumber Company owners and employes had been in existence for a number of years and was known by the respondent employer's sales manager in Kansas City and that the expense incurred incident to said hunting trips had in the past been paid by the respondent employer.

"The Referee further finds from the evidence that claimant's accident arose out of and in the course of his employment and comes within the scope of the Workmen's Compensation Act and should be compensated for under the terms of the Act."

There was an abundance of evidence before the commission to support these findings. By reversal of the judgment in this cause we nullify the findings of fact made by the commission, even though all the evidence tends directly to support those findings. We substitute our own appraisal concerning the weight of the evidence,

and, from the cold printed page, overturn the conclusions of the commission although not one word of evidence was offered by the employer or any other person in contradiction of the statements made by claimant. The refusal of our court to be governed by the findings of fact in this case is indicative of what appears to be a diminishing respect for the adjudication of facts by the trial courts and other fact-finding bodies. Thus the majority opinion does violence to the elemental rule in proceedings on error, that findings of fact are to be accepted by appellate courts in the absence of a clear showing of error.

It cannot be said that the facts as found by the commission do not entitle claimant to the relief sought. Our court has recognized the general rule applied by the commission to the facts of this case. In *Skaggs Co. v. Nixon,* 101 Colo. 203, 72 P. (2d) 1102, we quoted with approval the following: "Where an employee is doing something which, though not strictly in the line of his obligatory duty, is still doing something incidental to his work, and while doing the same is injured, the accident causing injury may properly be held to arise out of and in the course of employment, and he will be entitled to compensation." This rule has been applied repeatedly to cases similar to the instant cause.

In the case of *Ohlsen v. Dill,* 222 Minn. 10, 23 N.W. (2d) 15, compensation was awarded for the death of an employe who was drowned on a fishing trip which had been arranged by said employe with two customers. It was the custom and policy of the company in that case, as in the case at bar, to entertain customers and prospective customers on hunting and fishing trips. In upholding the award of compensation the court said: "We hold that the evidence fairly established here that it was the policy of the company to entertain customers and prospective customers; that decedent was so advised and instructed; that he carried out said instructions and successfully increased the business of the

company thereby; that at the time of the fatal accident he was engaged in entertaining a customer or a prospective customer of his employer pursuant to such policy and instructions as part of his duties and employment."

Thus it is clear that, contrary to the statements contained in the majority opinion, the well-established custom of going on hunting trips with the persons who actually gave orders for merchandise to claimant, is entitled to considerable weight in determining whether the accident arose out of and in the course of his employment. To like effect is the opinion in *Commercial Casualty Insurance Co. v. Strawn* (Texas), 44 S.W. (2d) 805.

The majority opinion omits any mention of much specific evidence tending strongly to support the findings of the commission, as for instance the following: "Q. Well, treating it from a policy angle, does the company expect you to entertain people such as this customer at, say, Sterling, Colorado? A. Yes, sir, they do. Q. Have you entertained them over a number of years? A. Yes, sir. Q. How many years? A. At least fifteen.

\* \* \*

"Q. When had you planned the hunting trip? A. It was planned, the definite plans were made on the Thursday preceding. The third was Monday. Probably Thursday. Q. It would be the 28th of February? [November] A. Yes, somewhere along in there. Q. Or the 29th of November? A. Just about that time, yes. Q. How were those arrangements arrived at? A. I telephoned. Q. Where did you telephone from? A. Denver.

\* \* \*

"Q. And what function does Acre have at the Platte Valley Lumber Company? A. He is the yard boss and usually buyer. Q. Well, did you have any dealings with either of these men in soliciting orders for paint? A. Yes, Mr. Acre usually gives me the order. Q. On how many occasions would that occur, on an average?

A. Oh, seven or eight times a year. Q. Practically every time? A. Practically every time.

\* \* \*

"Q. With whom did you go hunting in prior years there of the Platte Valley people? A. I have hunted with Horace for ten or fifteen years, Horace Acre."

The record establishes conclusively that claimant's employer approved and encouraged the type of entertainment indulged in by claimant over a period of many years in promoting the good will of the company, and it further appears that the conduct of claimant in handling the account of the Platte Valley Lumber Company had greatly increased the business of his employer.

MR. CHIEF JUSTICE STONE concurs in this dissent.