Argued October 25, affirmed December 22, 1972

# STATE OF OREGON, *Respondent, v.* MARTIN GENE SALLINGER (No. 72 1187), *Appellant.*

504 P2d 1383

*James M. Haberstad,* Law Student, argued the cause for appellant. On the brief were Gary D. Babcock, Public Defender, and J. Marvin Kuhn, Deputy Public Defender, Salem.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on

594

the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

SCHWAB, C.J.

Defendant appeals from a conviction upon trial to the court for first degree burglary, ORS 164.225, based on an indictment that charged he unlawfully entered a dwelling house with the intent to commit the crime of harassment, ORS 166.065, therein. His principal contention on appeal is that the harassment statute, ORS 166.065, is unconstitutionally vague and thus his intent at the time of his unlawful entry cannot be considered criminal under the burglary statute.[1]

On February 17, 1972, defendant made repeated efforts to talk with Karen Holt, whom he had previously dated, at her parents' house. On three occasions her parents gave defendant the message that Karen did not want to see him. Following the third refusal, defendant took a bayonet from his car, returned to the house, opened a door and walked in. Defendant picked Karen up and carried her, against her will, to his car. Karen jumped out of the car and ran back into the house. Defendant followed her, crashed through a locked door, and pulled Karen back outside. Defendant then calmed down and was sitting in his car talking to Karen when the police arrived.

As we understand the record and briefs, the

---

[1] Defendant also contends that there was not sufficient evidence of intent to raise a fact question. There is no merit to this contention.

case was tried on the theory that defendant violated[2] either ORS 166.065(1)(a) or 166.065(1)(d) or both.[3] They provide:

"(1) A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he:

"(a) Subjects another to offensive physical contact; or

"* * * * *

"(d) Engages in a course of conduct that alarms or seriously annoys another person and which serves no legitimate purpose."

■ ■ The mental element common to both ORS 166.065 (1) (a) and 166.065 (1) (d) is not unconstitutionally vague. The state is required to prove beyond a reasonable doubt that the defendant had the *specific* "intent to harass, annoy or alarm." *See, People v. Jemzura,* 29 NY2d 590, 324 NYS2d 315, 272 NE2d 897 (1971); *cf., People v. Moyer,* 27 NY2d 252, 317 NYS2d 9, 265 NE2d 535 (1970). Common dictionary definitions of the three terms—harass, alarm, annoy—are: to perplex, distress, vex, molest, trouble, disturb, badger, irritate, or provoke. All of these terms relate to the invasion of another person's privacy and freedom, either an invasion of the sanctity of his person or an invasion of his peace of mind. All three terms—harass, alarm, annoy—are used elsewhere in the law. *See,*

---

[2] While technically the question is whether defendant is guilty of burglary based on an intent to commit harassment, for convenience our discussion proceeds as though defendant were just charged with harassment.

[3] The defendant demurred to the indictment in an effort to require the state to specify which subsection under ORS 166.065 (1) he was accused of violating. The order of the court overruling this demurrer was not assigned as error on appeal. Thus the issue of whether the state should have been required to specify is not before us.

*Moody & Jamison v. Levy & Co.,* 58 Tex 532 (1883) (attachment statute provided attachment must not be for purpose of "harassing" defendant) ; *Embry v. The Commonwealth,* 79 Ky 439, 3 KLR 218 (1881) (statute prohibited conspiracy for purpose of "alarming or disturbing" any person) ; *In re Sheridan,* 230 Cal App2d 365, 40 Cal Rptr 894 (1964) (statute penalized annoying or molesting child). The mental element of harassment, ORS 166.065, is precisely defined and enables men of common intelligence to understand what is prohibited. *See, State v. Hodges,* 254 Or 21, 457 P2d 491 (1969).

■■ As a matter of statutory construction, defendant could not have been guilty of violating the action element of ORS 166.065 (1) (d). That section requires proof that the defendant engaged in a "course of conduct" with certain results. The Criminal Law Revision Commission's Commentary tells us ORS 166.065(1)(d) "is taken from New York Revised Penal Law § 240.25 (5)." Proposed Criminal Code, p 218. New York courts, in interpreting that provision, have stated:

"* * * '[C]ourse of conduct' is more than an isolated verbal or physical act. It is a pattern of conduct composed of same or similar acts repeated over a period of time, however short, which establishes a continuity of purpose in the mind of the actor * * *.

"The definition of the term as construed by other jurisdictions is not inapposite. Thus in Aetna Casualty and Surety Co. v. Industrial Commissioner, 127 Colo. 225, 255 P.2d 961, it was held that to come within the classification of 'course of conduct' it must be shown that such conduct is such a continuous practice as to constitute a regular course of conduct and an occasional instance does not establish such custom. In Dyer v. Dyer (166 Pa. Super. 520, 72 A.2d 605), the court stated that

'course of conduct' requires an element of continuity and in *Warkentin v. Kleinwachter*, 166 Okla. 218, 27 P.2d 160, it was held that 'course of conduct' cannot be shown by one particular transaction." *People v. Hotchkiss*, 59 Misc2d 823, 300 NYS2d 405, 407 (1969).

In "borrowing" a statute from another state, the legislature is presumed to adopt the interpretation of that statute reached by the courts of the other state, absent any indication to the contrary. *Harry and David v. Work. Comp. Bd.*, 6 Or App 566, 488 P2d 829, Sup Ct *review denied* (1971). Accordingly, we construe "course of conduct" in ORS 166.065 (1) (d) in the same way as the court in *People v. Hotchkiss*, supra. Defendant's conduct in this case was a single isolated transaction; no course of conduct was established. Accordingly, it is not necessary to reach the question of whether ORS 166.065 (1) (d) is unconstitutionally vague.

This leaves for consideration here the action element of ORS 166.065(1)(a)—"offensive physical contact." Before considering whether this language is unconstitutionally vague, our duty is to attempt to ascertain what the legislature intended by using it.

■ The legislative history clearly establishes that the upper limit of "offensive physical contact" is a contact that would constitute an assault as defined in the assault provisions of the new criminal code, ORS 163.165, 163.175, 163.185. These statutes all require that the victim suffer at least a "physical injury," defined in ORS 161.015(6) as "impairment of physical condition or substantial pain." We conclude that the harassment statute must have been intended to cover physical contacts resulting in something less than impairment of physical condition or substantial pain.

■ The legislative history is less clear as to the lower limit of "offensive physical contact" intended to be a violation of ORS 166.065(1)(a). While some of the history may be capable of another interpretation, the strongest indications are that by "offensive physical contact" the legislature meant striking, slapping, shoving, kicking, grabbing, and similar acts that are an interference with the "contactee," regardless of whether they produce any pain or discomfort.

Many passages in the Criminal Law Revision Commission's Commentary point toward this interpretation. Under the then proposed harassment section the Commentary states:

"* * * [This section] is intended to reach 'disorderly conduct' creating alarm or annoyance for an *individual* rather than the general public." Proposed Criminal Code, p 218.

The new disorderly conduct statute states a person commits the crime when he:

"Engages in fighting or in violent, tumultuous or threatening behavior * * *." ORS 166.025 (1)(a).

Also under the proposed harassment section it is stated:

"Paragraph (a) [i.e., what became ORS 166.065 (1)(a)] is derived from New York Revised Penal Law § 240.25(1) * * *." Commentary, Proposed Criminal Code, p 218.

The cited New York statute states one commits a crime if:

"He strikes, shoves, kicks or otherwise subjects * * * [another] to physical contact * * *." NY Penal Law § 240.25(1) (McKinney 1967).

Under familiar statutory construction rules, "physical contact" as used in the New York statute would prob-

ably be interpreted to mean contact that is substantially the same as a strike, shove or kick. Finally, the Commentary to the new assault statutes, while discussing that they will require a physical injury, states:

"* * * [T]rivial slaps, shoves, kicks, etc., are covered by the lesser offense of harassment * * *." Commentary, Proposed Criminal Code, p 93.

■ As interpreted, ORS 166.065 (1) (a) is not unconstitutionally vague. The prohibition against slapping, kicking, etc., another person provides a man of common intelligence with adequate notice of the prohibited conduct. *See, State v. Hodges,* supra.

■ Defendant's acts of twice grabbing Karen Holt and carrying and dragging her to his car constitute the crime of harassment under ORS 166.065(1)(a).

Affirmed.

FOLEY, J., specially concurring.

I concur in the result in this case but disagree with the majority's analysis of what the legislature intended by "offensive physical contact." The majority contends that the legislature intended that "offensive physical contact" is required to be "substantially the same as a strike, shove or kick." This leaves then, as noncriminal, such conduct as the fondling of a female's breasts, for example, or the placing of one's hands on a stranger's sexual organs, all with the most malevolent intent to harass, annoy or alarm. I do not believe this was the legislature's intent.

Going to the legislative history for help, I agree with the majority that:

"The legislative history is less clear as to the lower limit of 'offensive physical contact' intended to be a violation of ORS 166.065(1)(a). * * *"

But, while some of the history may be capable of another interpretation, the strongest indication is that by "offensive physical contact" the legislature meant any physical contact with the requisite intent that was not authorized, privileged or consented to.

The Criminal Law Revision Commission's Commentary states that ORS 166.065(1)(a)

> "* * * is designed to prohibit conduct presently constituting 'simple assault.' The assault sections in Article 11 require a physical injury. Petty batteries not producing injury will not constitute criminal assault under Article 11. If petty battery is committed with the intent to 'harass, annoy or alarm' it will be subject to prosecution as harassment." Proposed Criminal Code, p 218.

In other words, the draftsmen equated the action element of petty battery with the action element of harassment under ORS 166.065(1)(a).

Reading the above-quoted Commentary together with the Commentary to the then proposed assault provisions, Proposed Criminal Code, p 95, I conclude the draftsmen were thinking in terms of the common law meaning of battery when they made the analogy between battery and harassment. At common law any touching of another, with the requisite intent, could constitute a battery. 6 Am Jur2d at 10-11, Assault and Battery § 5; 6 CJS 914, Assault and Battery § 57. Thus a person who kissed a total stranger, or placed his hands on, for example, a stranger's sexual organs, or spat into a stranger's face would have committed a common law battery. *See* LaFave & Scott, Criminal Law 604 (1972). I believe the harassment statute, ORS 166.065(1)(a), was intended to cover such situations and all others involving an unconsented, unprivileged, unauthorized physical contact.

As thus interpreted, ORS 166.065(1)(a) is not unconstitutionally vague. The prohibition against touching another person provides a man of common intelligence with adequate notice of the prohibited conduct. *See State v. Hodges,* 254 Or 21, 457 P2d 491 (1969).

Here the defendant's acts constitute harassment under both the majority and this analysis. I concur in the result.