Argued March 1; resubmitted in banc May 8,
reversed and remanded for trial May 14, 1979

STATE OF OREGON, *Appellant,*

v.

FRANK D. KELLER, *Respondent.*

(No. DA143278, CA 12239)

594 P2d 1250

Allison Smith, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Linda Hughes, Certified Law Student, Portland, argued the cause for respondent. With her on the brief was Janet L. Hoffman, Supervising Attorney, Metropolitan Public Defender, Portland.

SCHWAB, C. J.

## SCHWAB, C. J.

Defendant was charged with the crime of harassment by a complaint that alleged he subjected the victim "to offensive physical contact, to-wit: by causing spital to land on the person of said [victim]." The parties treat "causing spital to land" as a convoluted way of saying defendant spit on the victim. Defendant demurred on the ground that spitting on another is not, as a matter of law, offensive physical contact and thus not prohibited by the harassment statute. The trial court granted the demurrer. The state appeals. We reverse.

ORS 166.065(1)(a) provides: "A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he * * * [s]ubjects another to offensive physical contact." We held in *State v. Sallinger,* 11 Or App 592, 598, 504 P2d 1383 (1972): "* * * by 'offensive physical contact' the legislature meant striking, slapping, shoving, kicking, grabbing, and similar acts that are an interference with the 'contactee' * * *." To here make explicit what was at least implicit in *Sallinger,* we hold: (1) our statement of illustrations—striking, slapping, etc.—was not intended to be a comprehensive enumeration of the acts prohibited by the statute; (2) rather, our illustrations were designed to point out that ORS 166.065(1)(a) was intended to prohibit all forms of contact that are comparable with, the equivalent of or substantially similar to, striking, slapping, etc. in respect to interference with the integrity of the victim; (3) striking, slapping, etc. and comparable acts are not, as a matter of law, "offensive physical contact" within the meaning of ORS 166.065(1)(a)—instead, it remains a question for the factfinder in each individual case whether under the specific circumstances pleaded and proved the defendant subjected another to offensive physical contact; and (4) in making that assessment the factfinder must apply an objective standard—what would a reasonable person regard as offensive contact in the

circumstances, not what was the victim's subjective reaction.

■ Applying that understanding here, we conclude that spitting on another can be an interference with the physical integrity of the victim that is comparable to striking, slapping, etc. It follows that the trial court erred in concluding, as a matter of law, that spitting on another cannot be offensive physical contact within the meaning of ORS 166.065(1)(a).

Defendant presents two arguments for a contrary conclusion. He first invokes Judge Foley's specially concurring opinion in *Sallinger* which contended that the majority interpretation of ORS 166.065(1)(a) left as noncriminal "fondling of a female's breasts" or spitting "into a stranger's face." 11 Or App at 599-600. Specially concurring and dissenting opinions often contain hyperbole and thus can be of doubtful, or even dangerous, utility in interpreting a majority opinion. For example, Judge Foley's suggestion that the *Sallinger* majority legalized nonconsensual breast fondling overlooked the separate crime of sexual abuse, ORS 163.415 − 163.425. That separate crime can be and had been committed in several cases involving nonconsensual touching of a woman's breasts. *See, State v. Turner,* 33 Or App 157, 575 P2d 1007, *rev den* 282 Or 537 (1978); *State v. Pagel,* 16 Or App 412, 518 P2d 1037, *rev den, cert den* 419 US 867 (1974).

Likewise, Judge Foley's individual belief that the *Sallinger* majority ruled that spitting on another cannot be "offensive physical contact" within the meaning of ORS 166.065(1)(a) simply is not precedent for that conclusion. On the contrary, we think the opposite conclusion is fully consistent with the *Sallinger* majority opinion, as elaborated above.

■ Defendant's second contention is stated as follows:
"Although spitting is undoubtedly offensive physical *conduct,* it is currently not punishable as offensive 'physical *contact'* under the statutory scheme." (Emphasis supplied.)

[146]

If we understand this correctly, defendant would limit the meaning of "contact" in ORS 166.065(1)(a) to situations in which the flesh of the defendant literally touched the flesh of the victim. Defendant would thus exclude from the range of prohibited "contact" such acts as hitting another with a thrown missile, poking another with a stick or—carried to a logical extreme—striking the clothing rather than the flesh of the victim. We reject the suggested limitation of the meaning of "contact" as untenable.

The difficulty in interpreting and applying the harassment statute is further documented by the specially concurring opinion filed today by Judge Buttler. He would interpret the expression "offensive contact" to mean "nonconsensual contact." But by prohibiting only "offensive contact," the legislature necessarily implied that there is such a thing as "inoffensive contact" which is not prohibited. As just one possible example, the legislature may have thought that the act of one person, with the requisite intent, bumping into another in a crowd was simply too inconsequential to warrant any possibility of a criminal sanction. But whatever the intended dividing line between offensive and inoffensive contact, we are not aware of any definitions that would make it synonymous with the dividing line between consensual and nonconsensual contact. As we said years ago in *Sallinger*, 11 Or App at 598, we continue to find the history of ORS 166.065(1)(a) too inconclusive to hold that the legislature said "offensive contact" when it really meant "nonconsensual contact."

In conclusion, the trial court's determination that spitting on another cannot, as a matter of law, be offensive physical contact within the meaning of ORS 166.065(1)(a) was an erroneous interpretation of the statute.

Reversed and remanded for trial.

**BUTTLER, J,** specially concurring.

Defendant was charged with the crime of harassment, ORS 166.065(1)(a),[1] in that he subjected another to offensive physical contact by spitting in his face. The defendant's demurrer was sustained by the district court upon its finding that, under *State v. Sallinger,* 11 Or App 592, 504 P2d 1383 (1972), spitting in another's face was not the type of physical contact covered by the statute.

In *State v. Sallinger,* we held that ORS 166.065(1) (a) is not unconstitutionally vague. In doing so, we pointed out that this subsection of ORS 166.065 was derived from New York Penal Law § 240.25(1) (McKinney 1967), Proposed Oregon Criminal Code 218, Commentary, § 223 (1970), and that the legislature, when it borrows a statute, is presumed to adopt the interpretation of the statute reached by the New York courts, absent some indication to the contrary. *State v. Sallinger, supra* at 597; *cf. State v. Clark,* 39 Or App 63, 591 P2d 752 (1979). The cited New York statute provides that one commits the crime of harassment if:

> "He strikes, shoves, kicks, or otherwise subjects [another] to physical contact * * *."

We concluded in *Sallinger* that the statute must have intended to cover physical contacts resulting in something less than impairment of physical condition or substantial pain, and while the lower limits of "offensive physical contact" were less clear, the legislature meant to include "striking, slapping, shoving, kicking, grabbing, and similar acts that are an interference with the 'contactee,' regardless of whether they produce any pain or discomfort." 11 Or App at 598.

---

[1] ORS 166.065(1)(a) provides:

"(1) A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he:

"(a) Subjects another to offensive physical contact * * *."

[148]

We did not, in *Sallinger,* go on to consider how the New York courts have interpreted "physical contact," as that term is used in the New York statute. Their interpretation of the phrase includes all petty batteries, no matter how technical or inconsequential. *People v. Hare,* 66 Misc 2d 207, 319 NYS2d 890 (1971); *People v. Smolen,* 69 Misc 2d 920, 331 NYS2d 98 (1972); New York Penal Law 159, Practice Commentary, § 240.25 (McKinney 1967). The Criminal Law Revision Commission's Commentary to the Proposed Oregon Criminal Code adopts the same interpretation:

> "Paragraph (a) is designed to prohibit conduct presently constituting 'simple assault.' The assault sections in Article 11 require a physical injury. Petty batteries not producing injury will not constitute criminal assault under [the assault statutes]. If petty battery is committed with the intent to 'harass, annoy or alarm' it will be subject to prosecution as harassment." Proposed Criminal Code 218, Commentary, § 223 (1970).

A majority of the court now abandons the New York "adoption" articulated in *Sallinger* and recently restated in *Clark,* and goes off on an *ad hoc* application of an otherwise overly vague statute. *State v. Sanderson,* 33 Or App 173, 575 P2d 1025 (1978). Unless we can find an anchor to tie "offensive physical contact" to, its application will continue to be elusive, as Judge Joseph in his separate opinion seems to sense. The trial court reasonably interpreted *Sallinger*—it appears to require direct physical contact: "striking, slapping, shoving, kicking, grabbing and similar acts." This court is unanimous in agreeing that the trial court erred, but we cannot agree on the reason. Perhaps that circumstance, in itself, should tell us something is wrong.

I would accept the New York court's interpretation of that state's similar statute and the Criminal Law Revision Commision's Commentary, and would hold that "offensive physical contact" includes all common

law petty batteries. Absent that anchor, the statute should be laid to rest because of its uncertain meaning.

Accepting that interpretation, the remaining question is whether spitting in the face of another is a common law petty battery. At common law, a battery was any intentional, unlawful touching or striking of the person of another by the aggressor himself or by any substance put in motion by him. 1 Wharton, Criminal Law and Procedure 684, § 337 (Anderson 1957). Neither injury nor direct person-to-person touching was necessary; *e.g.,* throwing rocks at another or striking them with a stick. Spitting into another's face without consent constitutes a battery.[2]

In summary, I conclude that the legislature intended the harassment statute to cover those petty batteries formerly covered by the assault statutes (when committed with the requisite intent) and that spitting in the face of another, being a battery, is "offensive physical contact."

**JOSEPH, J.,** specially concurring.

Defendant spit on someone. He was charged with harassment under ORS 166.065(1)(a).[1] The question presented is whether that act was an "offensive

---

[2] The specially concurring opinion in *State v. Sallinger,* 11 Or App 592, 600, 504 P2d 1383 (1972), foresaw the fact situation before us today:

"* * * Thus a person who kissed a total stranger, or placed his hands on, for example, a stranger's sexual organs, or spat into a stranger's face would have committed a common law battery. * * *"

[1] ORS 166.065:

"(1) A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he:

"(a) Subjects another to offensive physical contact; or

"(b) Publicly insults another by abusive or obscene words or gestures in a manner likely to provoke a violent or disorderly response; or

"(c) Communicates with a person, anonymously or otherwise, by telephone, mail or other form of written communication, in a manner likely to cause annoyance or alarm; or

"(d) Engages in a course of conduct that alarms or seriously annoys another person and which serves no legitimate purpose.

"(2) Harassment is a Class B misdemeanor."

physical contact." On demurrer, the trial court said no; we say, "It can be."

Once again, what the legislature "has forgotten we will stuff with cotton."[2] And there is "solid" precedent for doing so. In *State v. Sallinger,* 11 Or App 592, 504 P2d 1383 (1973), the court supplied the words "striking, slapping, shoving, kicking, grabbing, and similar acts that are an interference with the 'contactee,' regardless of whether they produce any pain or discomfort." That was done to protect the statute from the otherwise obvious conclusion that no reasonable person (or jury) could tell what the words actually used in subparagraph (a) were intended to outlaw. Then, in *State v. Zeit,* 22 Or App 480, 539 P2d 1130, *rev den* (1975), the court saved subparagraph (c) by finding that dead-of-night telephone calls by a caller (whose identity was known to the victims) were "anonymously" done, and done "in a manner likely to cause annoyance or harm," (thus mixing up the questions of intent and action). In *State v. Larsen,* 37 Or App 425, 588 P2d 41 (1978), we rescued subparagraph (c) once more by reading the words "to convey sexually offensive or threatening messages" into the statute because "it would have been difficult for the legislature to be more precise in defining this offense."[3] In this case we say subparagraph (a) covers anything a jury may be persuaded would offend them.

In this course of cases, there is one that "stands out like a petunia in an onion patch": *State v. Sanderson,* 33 Or App 173, 575 P2d 1025 (1978). There, at 176-77,

---

[2] Citation omitted.

[3] Apparently our function is to read the legislature's actual words under the guidance of a wee small voice which is saying, "The legislators need all the help we can give them." What we have done to save a related and at best equally vague statute (ORS 166.025) may be read in *State v. Marker,* 21 Or App 671, 536 P2d 1273 (1975); *State v. Donahue,* 39 Or App 79, 591 P2d 394 (1979); and *State v. Clark,* 39 Or App 63, 591 P2d 752 (1979). Those cases also suggest that we are generally willing to uphold statutes that give maximum broad discretion to the police and prosecutors even when *we* have to supply the *operative wording* of the statutory prohibition.

we phrased the standard for determining the quality of a statute under a "void-for-vagueness" attack in this way:

"*** The basic deficiency is that the phrase 'alarms or seriously annoys' gives no basis to distinguish between anti-social conduct which was intended to be prohibited and socially tolerable conduct which could not reasonably have been intended to be subject to criminal sanction. This is for two reasons: The over-generality of the language and its subjective quality."

We proceeded to hold subparagraph (d) unconstitutional in these words:

"*** Thus, it appears that the legislature used deliberately general language to create a statute elastic enough to encompass a wide range of undefined conduct. It succeeded all too well. Because the legislative purpose in enacting the statute provides no basis for judicial narrowing of its scope, the statute is not susceptible to salvation by interpretation and it must be set aside. ***"

The conclusion just quoted found its base in a legislative admission that subsection (d) was intended as a "catchall," but the faults cited apply to every jot and tittle of ORS 166.065(1).[4]

Today we again rescue this catchall statute, this time by leaving the matter of its coverage to the jury. Given that the only issue before us is as narrow as it is, that does not incense me quite as much as the earlier cases do. I regret, however, that the majority's response to Judge Buttler's special concurrence may create additional confusion with its theatre crowd example. It is not necessary to talk about what "the legislature may have thought"; what it said is "with intent to harass, annoy or alarm." And that, of course, is part of the problem.

---

[4] And also to ORS 166.025 in all probability. If this court had at the very outset not tried to rescue two vague statutes, we would not have found it necessary to engage in the sort of rationalistic maneuvering evidenced by *Donahue* and *Clark, supra,* n 4.

I concur only because there is no constitutional question before us and because the result makes as much sense as anything else (except *Sanderson*) that we have done under the statute.