**Dalip SINGH, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 03–70217.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 14, 2004.

Filed Oct. 21, 2004.

Tilman Hasche and Dagmar Butte, Parker, Bush & Lane, Portland, OR, for the petitioner.

Peter D. Keisler, Assistant Attorney General, Civil Division; Richard M. Evans, Assistant Director; and James A. Hunolt, Office of Immigration Litigation, United States Department of Justice, Civil Division, Washington, D.C., for the respondent.

Before: GRABER, GOULD, and BERZON, Circuit Judges.

GOULD, Circuit Judge:

Dalip Singh petitions for review of a decision of the Board of Immigration Appeals (BIA), affirming without opinion the order of the immigration judge (IJ). The IJ ordered Singh removed to India pursuant to 8 U.S.C. § 1227(a)(2)(E)(i) on the ground that Singh committed a "crime of domestic violence" when he committed the Oregon crime of harassment, Or.Rev.Stat. § 166.065(1)(a)(A), against his spouse. We must decide whether Oregon's harassment law, which outlaws intentionally harassing or annoying another person by subjecting that person to offensive physical contact, is a "crime of violence" as defined by 18 U.S.C. § 16(a). We have jurisdiction under 8 U.S.C. § 1252(a)(1). We grant Singh's petition and vacate the IJ's order of removal.

**I**

Singh, a native and citizen of India, entered the United States in 1990. In May of 1993, Singh was granted lawful permanent resident status based on his marriage to United States citizen Linda Olson. In June of 1998, Singh pleaded guilty to the Oregon state law crime of harassment, a class B misdemeanor. Or.Rev.Stat. § 166.065. As a result of that conviction, in February of 1999, the Immigration and Naturalization Service (INS)[1] issued to Singh a Notice to Appear, charging that Singh was subject to removal under 8 U.S.C. § 1227(a)(2)(E)(i) because he had been convicted of a "crime of domestic violence."

A hearing was held in December of 1999. The IJ held that Singh's conviction under Oregon's harassment law was a predicate offense for removal under federal law because, as the IJ saw it, the harassment statute "necessarily encompasses by its elements that requirement of force for a crime of violence under 18 U.S.C. § 16(a)." On December 20, 1999, the IJ ordered Singh removed to India. On December 17, 2002, the BIA affirmed without opinion the IJ's order, so "we review the IJ's opinion as the final agency decision." *Tokatly v. Ashcroft*, 371 F.3d 613, 618 (9th Cir.2004). Singh timely filed a petition for review on January 14, 2003, arguing that he was not removable under 8 U.S.C. § 1227(a)(2)(E)(i) because Oregon's harassment offense was not a "crime of violence" as defined by 18 U.S.C. § 16(a). Singh's theory was that the Oregon offense to which he pleaded guilty, and for which he was convicted, does not have as an element the use of physical force against the person of another.

**II**

We review de novo an IJ's interpretation of a statute. *El Himri v. Ashcroft*, 378 F.3d 932, 936 (9th Cir.2004). We reject the respondent Attorney General's assertion that we owe "substantial deference" to the Attorney General's interpretations of general state and federal criminal statutes.

Respondent cites the Supreme Court's decision in *INS v. Aguirre–Aguirre*, 526 U.S. 415, 424, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999), and our decision in *Lara–Chacon*, 345 F.3d 1148, 1151 (9th Cir.2003), to support its assertion that we owe "substantial deference" to the Attorney General's statutory interpretation. We reject this argument. *Aguirre–Aguirre* concerned an interpretation of a statute that

---

1. The Department of Justice transferred functions of the INS to the Department of Homeland Security in March 2003. *See* Homeland Security Act of 2002, Pub.L. No. 107–296, § 471, 116 Stat. 2135 (2002). For convenience, we refer to the INS rather than the Department of Homeland Security.

the Attorney General was charged with administering and enforcing. 526 U.S. at 424, 119 S.Ct. 1439. Here, we address interpretations of a state and a federal criminal statute, and so *Aguirre–Aguirre* is inapposite. *See United States v. Mead Corp.*, 533 U.S. 218, 226–27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) (observing that *Chevron* deference applies only when "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law"). Likewise, *Lara–Chacon*, while recognizing that the BIA's interpretation of immigration laws is entitled to deference, reviewed de novo the question of whether a conviction under state law is a deportable offense. 345 F.3d at 1151. We reject the respondent Attorney General's contention that an interpretation of state and federal criminal law by the respondent in the context of this case warrants deference. The Seventh Circuit has similarly so held. *Flores v. Ashcroft*, 350 F.3d 666, 671 (7th Cir.2003) ("[J]ust as courts do not defer to the Attorney General or United States Attorney when § 16 must be interpreted in a criminal prosecution, so there is no reason for deference when the same statute must be construed in a removal proceeding. Any delegation of interpretive authority runs to the Judi-

cial Branch rather than the Executive Branch.").

## III

■■■ Singh is removable for having committed a "crime of domestic violence" if he committed a "crime of violence" against a domestic partner. 8 U.S.C. § 1227(a)(2)(E)(i).[2] A "crime of violence" is defined by federal law as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a).[3] An element of a crime is "a constituent part of the offense which must be proved by the prosecution *in every case* to sustain a conviction under a given statute." *United States v. Innie*, 7 F.3d 840, 850 (9th Cir.1993) (quoting *United States v. Sherbondy*, 865 F.2d 996, 1010 (9th Cir.1988)) (internal quotation marks omitted). Thus, in assessing whether Singh is removable for committing a "crime of domestic violence," the dispositive issue becomes whether his state law conviction for harassment is a "crime of violence" under 18 U.S.C. § 16(a), when we look only at the necessary elements of the state law offense of conviction. *See Innie*, 7 F.3d at 850; *cf. Taylor v. United*

---

**2.** Under the removal statute, the predicate "crime of domestic violence" is defined as any crime of violence (as defined in section 16 of title 18) against a person committed by a current or former spouse of the person, by an individual with whom the person shares a child in common, by an individual who is cohabiting with or has cohabited with the person as a spouse, by an individual similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs, or by any other individual against a person who is protected from that individual's acts under the domestic or family violence laws of the United States or any State, Indian tribal government, or unit of local government.

8 U.S.C. § 1227(a)(2)(E)(i).

**3.** Only subsection (a) of 18 U.S.C. § 16 is relevant to the resolution of this case. Subsection (b) defines a "crime of violence" in the alternative as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). It is undisputed that Singh's offense under Or.Rev.Stat. § 166.065(1)(a)(A) was a misdemeanor. *See* Or.Rev.Stat. § 166.065(3) ("Harassment is a Class B misdemeanor."). Accordingly, we assess only whether Singh's offense was a "crime of violence" under § 16(a).

*States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990).[4]

■ Singh pleaded guilty to the Oregon offense of harassment. The relevant portion of the harassment statute reads: "A person commits the crime of harassment if the person intentionally: Harasses or annoys another person by [s]ubjecting such other person to offensive physical contact." Or.Rev.Stat. § 166.065(1)(a)(A). Oregon's harassment law, by its terms, has three elements: (1) an intent to harass or annoy another person; (2) physical contact with that person, whether direct or indirect; and (3) offensiveness of the contact, judged by an objective standard. *See State v. Keller*, 40 Or.App. 143, 594 P.2d 1250, 1251–52 (1979) (en banc).

If Oregon's offense of harassment does not have "as an element the use, attempted use, or threatened use of physical force against the person or property of another," then the offense does not constitute a "crime of violence" within the meaning of the removal statute, and Singh may not be removed for committing a "crime of domestic violence." Of the three elements that the prosecution must prove in every case to secure a conviction for harassment,

only the latter two bear a logical relationship to physical force.[5] We will examine Oregon and federal law to assess whether objectively offensive physical contact necessarily entails proof of the use of physical force sufficient to constitute a "crime of violence."

■ In *State v. Sallinger*, 11 Or.App. 592, 504 P.2d 1383, 1386 (1972), the Oregon Court of Appeals defined the lower limit of Oregon's harassment statute to include "striking, slapping, shoving, kicking, grabbing, and similar acts that are an interference with the 'contactee,' regardless of whether they produce any pain or discomfort." The Oregon Court of Appeals, in consistent terms, elaborated on the laxity of this standard in *State v. Keller*, 40 Or. App. 143, 594 P.2d 1250. There, the appellate court clarified the lower limit of Oregon's harassment statute, holding that "spitting on another can be an interference with the physical integrity of the victim" sufficient to sustain a conviction for harassment. *Id.* at 1252. Indirect physical contacts such as "hitting another with a thrown missile, poking another with a stick or . . . striking the clothing rather than the flesh of the victim," all are cognizable un-

---

4. The Ninth Circuit has held that the *Taylor* categorical approach and the "modified categorical approach" of *Taylor's* progeny, such as *United States v. Rivera–Sanchez*, 247 F.3d 905 (9th Cir.2001), and *United States v. Franklin*, 235 F.3d 1165 (9th Cir.2000), govern the analysis of whether a prior state law conviction was a "domestic offense" such that it qualifies as a predicate offense for alien removal under 8 U.S.C. § 1227(a)(2)(E)(i). *Tokatly*, 371 F.3d at 624–25. *Contra Flores v. Ashcroft*, 350 F.3d 666, 668, 670–71 (7th Cir. 2003) (holding that the "domestic" nature of the offense can be determined without a *Taylor* approach because "all aspects of the definition are federal"). Here, Singh has waived the issue of whether his prior conviction was a "domestic" offense because he did not raise the issue before the agency and does not argue the issue in his briefs. *See Collins v.*

*City of San Diego*, 841 F.2d 337, 339 (9th Cir.1988) ("It is well established in this Circuit that claims which are not addressed in the appellant's brief are deemed abandoned."); *see also* Fed. R.App. P. 28(a)(9)(A) (requiring that appellant's brief contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

5. The requisite mens rea of Oregon's harassment offense is reflected in the "intent to harass or annoy" element of the offense, but that element has no relation to physical force. One can intend to harass or annoy another without resort to any force, let alone physical force, as in the case of the verbal harasser or the mimic.

der Oregon's harassment law. *Id.* at 1252.[6]

The necessary elements of the Oregon crime of harassment, as defined by the statute and case law, do not require sufficient "force" to constitute a "crime of violence" under 18 U.S.C. § 16(a). We have squarely held "that the force necessary to constitute a crime of violence [ ] must actually be violent in nature." *United States v. Ceron–Sanchez,* 222 F.3d 1169, 1172 (9th Cir.2000) (quoting *Ye v. INS,* 214 F.3d 1128, 1133 (9th Cir.2000)) (alteration in original) (internal quotation marks omitted); *see also* Black's Law Dictionary 673 (8th ed.2004) (defining actual or physical force as "[f]orce consisting in a physical act, esp. a violent act directed against a ... victim"). Yet the Oregon harassment offense, harkening back to the ancient common law of battery,[7] can be made out based on an ephemeral touching, so long as it is offensive.

 Respondent relies on the BIA's decision in *In re Martin,* 23 I. & N. Dec. 491, 493 (BIA 2002) (en banc), arguing that it holds that the legislative history of 18 U.S.C. § 16 supports the conclusion that an assault involving the intentional infliction of physical injury has as an element the use of physical force. This argument, however, misses the point. We find *In re Martin* unpersuasive because it dealt with a state statute that required intent to inflict physical injury. 23 I. & N. Dec. at 493–95. By contrast, as we have explained, the Oregon harassment statute will routinely embrace within its prohibition, if the intent to harass is shown, an offensive touching that is not aimed at creating physical injury. Two of our sister courts of appeals have similarly rejected *In re Martin* as unpersuasive because the BIA ignored the unambiguous text of § 16. As these courts correctly noted, a crime of violence must have "as an element" the use of physical force. *Flores,* 350 F.3d at 671–72; *Chrzanoski v. Ashcroft,* 327 F.3d 188, 196–97 (2d Cir.2003). The Oregon law we confront, however, requires neither an intent to inflict a physical injury nor a resulting physical injury. *See Sallinger,* 504 P.2d at 1386 (interpreting Oregon's harassment statute to cover "acts that are an interference with the 'contactee,' regardless of whether they produce any pain or discomfort").[8]

---

6. The Oregon Court of Appeals has rejected as "untenable" the contention that "contact" be limited to situations where "the flesh of the defendant literally touched the flesh of the victim." *Id.* at 1252.

7. *See Weaver v. Ward,* 80 Eng. Rep. 284 (K.B. 1616); *see also* 3 Blackstone, Commentaries on the Law of England 120 (Univ. of Chicago Press ed. 1979) ("The lea[s]t touching of another's per[s]on wilfully, or in anger, is a battery; for the law cannot draw the line between different degrees of violence, and therefore totally prohibits the fir[s]t and lowe[s]t [s]tage of it: every man's per[s]on being [s]acred, and no other having a right to meddle with it, in any the [s]lighte[s]t manner.") (alterations from Old English).

8. We are not persuaded by respondent's reliance on a First Circuit case interpreting "physical force," in a federal statute prohibiting possession of a firearm by one previously convicted of a crime of domestic violence, 18 U.S.C. § 922(g)(9), to include all physical force, regardless of its propensity to cause injury. *See United States v. Nason,* 269 F.3d 10, 16–18 (1st Cir.2001) (holding that Congress intended the phrase "physical force," incorporated into § 922(g)(9), to "encompass crimes characterized by the application of *any* physical force"). *Nason* addressed a Maine assault statute that criminalized "intentionally, knowingly, or recklessly caus[ing] bodily injury or offensive physical contact to another person." Me.Rev.Stat. Ann. tit. 17–A, § 207(1); *see Nason,* 269 F.3d at 18. But Oregon's harassment statute only requires an offensive physical contact, which may be accidental. Even if it might be argued that an intentional offensive physical contact entails the use of physical force, the Oregon statute does not require an *intentional* offensive phys-

That Oregon requires a physical contact to be objectively offensive does not change our analysis. *Keller* held that "causing spittle to land on the person" of another may be objectively offensive. 594 P.2d at 1251. Under the most extreme case, perhaps spitting forcefully at another might be argued to constitute the use of some physical force, but 18 U.S.C. § 16(a) is not concerned with the most extreme case. Rather, 18 U.S.C. § 16(a) is concerned with the least extreme cases of an offense that nonetheless satisfy the offense's necessary elements. *See Innie,* 7 F.3d at 850. Given that "causing spittle to land on the person" of another is sufficient to sustain conviction for harassment, there are many objectively offensive physical contacts that may suffice for harassment under Oregon law, but not rise to a level of "physical force," and certainly not violent physical force satisfying the federal definition in 18 U.S.C. § 16(a) of a "crime of violence."

Oregon's harassment law reaches acts that involve offensiveness by invasion of personal integrity, but that do not amount to the use, attempted use, or threatened use of "physical force." We hold that the Oregon harassment statute, Or.Rev.Stat. § 166.065(1)(a)(A), does not require as necessary elements of conviction acts that meet the federal definition of a "crime of violence" under § 16(a). Accordingly, the respondent has not satisfied its burden to show that Singh has committed a "crime of domestic violence" under 8 U.S.C. § 1227(a)(2)(E)(i), warranting his removal.

The petition is GRANTED and the order of removal is VACATED.

---

ical contact. More importantly, our precedent interpreting 18 U.S.C. § 16's definition of a "crime of violence" requires "physical force" to be violent in nature. *Ceron–Sanchez,* 222 F.3d at 1172–73. The Oregon harassment statute does not satisfy this standard. *Nason* addressed 18 U.S.C. § 922(g)(9)'s prohibition on possession of a firearm by one who has been convicted of a crime of domestic violence, and not the defi-

nition of "physical force" under 18 U.S.C. § 16. The same or similar words may have different meanings when used in different statutes motivated by different legislative purposes. *Perez–Arellano v. Smith,* 279 F.3d 791, 794 (9th Cir.2002); *see also Atl. Cleaners & Dyers, Inc. v. United States,* 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204 (1932). We decline to follow *Nason* in interpreting 18 U.S.C. § 16(a).