Argued and submitted December 18, 1981, affirmed April 26, 1982

## STATE OF OREGON,
*Respondent,*

*v.*

## ROBERT GLENN HORN,
## CARLTON ALLEN OLSON,
## JULIE EVANS POWELL,
## BARRETT KENT JONES,
*Appellants.*

(No. M49008, CA A20974)

643 P2d 1338

▮▮▮

▮▮

Robert A. Goffredi, Portland, argued the cause for appellant Robert Glenn Horn. With him on the brief was MacMillan & Scholz, P.C., Portland.

E. Ted Meece, Portland, argued the cause and filed the brief for appellant Carlton Allen Olson.

Hank McCurdy, Portland, filed the brief for appellant Julie Evans Powell.

Douglas A. Swanson, Portland, argued the cause for appellant Barrett Kent Jones. With him on the brief was Royce, Swanson & Thomas, Portland.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

▮

0

## WARDEN, J.

Defendants appeal their convictions for disorderly conduct. ORS 166.025(1)(e).[1] On August 7, 1980, defendants were arrested outside of the Tektronix plant, at the intersection of Jenkins and Knowlton Roads, in Washington County. The complaint charged them as follows:

> "The above named defendant(s) is/are accused by this Complaint of the crime(s) of disorderly conduct committed as follows:

> "That the above named defendant(s) on or about the 7th day of August, 1980, in Washington County, Oregon, did unlawfully and recklessly create a risk of public inconvenience, annoyance and alarm by obstructing vehicular traffic on a public way, to-wit: S. W. Knowlton Road, Beaverton, by passing out leaflets and attempting to sell newspapers * * *."

The cases were consolidated for trial, and defendants joined in all motions made during the proceedings.

On appeal, defendants make 17 assignments of error,[2] which raise four issues. We will consider the contentions in the order they arose during trial.

## DEMURRERS

Defendants demurred[3] to the complaint on four separate grounds: 1) the facts as alleged fail to constitute an offense within the purview of ORS 166.025(1)(e); 2) the complaint states matters which, if true, would constitute a legal bar to the action; 3) the statute is unconstitutionally overbroad when applied to protected free speech; and 4) the statute is unconstitutionally vague.

---

[1] ORS 166.025(1)(e) provides:

"A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

"* * * * *

'(e) Obstructs vehicular or pedestrian traffic on a public way; * * *."

[2] Although defendants joined together in all motions during the trial, on appeal they have filed separate briefs, some of which assign as error matters not urged by others. We have consolidated those assignments of error and addressed them as if all four defendants had raised the same issues.

[3] There were two demurrers to the complaint, one submitted by defendant Olson, the other by defendant Horn.

In support of the first two contentions, defendants argue that the allegation that defendants were "passing out leaflets and attempting to sell newspapers" when they obstructed vehicular traffic exempts them from prosecution under ORS 166.025(1)(e), because the legislature did not intend that persons be prosecuted under that subsection for exercising their rights of free speech and assembly guaranteed by the First Amendment to the United States Constitution and Article I, Sections 8 and 26 of the Oregon Constitution.[4] Defendants rely on the commentary to the proposed Criminal Code of 1971, which states, at 215, that subsection (e) of ORS 166.025(1)

"covers the intentional obstruction of vehicular or pedestrian traffic. It is not intended to prohibit persons gathering to hear a speech or otherwise communicate."

The present statute is the same as that proposed; hence, the commentary is relevant to the issue of legislative intent. *State v. Valdez,* 277 Or 621, 625, 561 P2d 1006 (1977).

██ ██ Reading the statement in the context of the entire commentary to the proposed disorderly conduct statute, we discern that the language in question reflects the concern of the Criminal Law Revision Commission that subsection (e) is *potentially capable* of being unconstitutionally applied to persons who are lawfully exercising freedom of speech. Within that context, the comment stands as a cautionary remark to those seeking to enforce the subsection of the statute that a specific intent to obstruct traffic, or a reckless disregard of the danger that traffic will be obstructed, is a necessary element of the offense defined in subsection (e). We conclude that neither the Commission nor the legislature intended to immunize from prosecution

---

[4] The First Amendment to the United States Constitution provides in part:

"Congress shall make no law * * * abridging the freedom of speech * * * or the right of the people peaceably to assemble * * *."

Article I, § 8 of the Oregon Constitution provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

Article I, § 26 of the Oregon Constitution provides in part:

"No law shall be passed restraining any of the inhabitants of the state from assembling together in a peaceable manner to consult for their common good * * *."

*all* persons who engage in communication while obstructing traffic. Defendants' demurrer on these grounds was properly overruled.

■ ■ Defendants' other contentions, that the complaint is subject to demurrer because the statute is unconstitutionally overbroad and vague, also fail. In order to prevail on a demurrer on constitutional grounds, defendants must show that the statute under which they were charged is overbroad (or vague) on its face. *See State v. Spencer,* 289 Or 225, 611 P2d 1147 (1980). On appeal, defendants concede that the statute is not unconstitutional on its face; instead they argue that the statute is unconstitutional *as applied* to persons exercising their rights of free expression. The question of the applicability of the statute is one that can be answered only after evidence of defendants' conduct is presented at trial. Defendants' demurrer was properly overruled.

## MOTION FOR MISTRIAL

■ On the second day of trial, defendants moved for a mistrial on the ground that their case was prejudiced, because police officer Balada was allowed to testify after the District Attorney had indicated to defendants that the state would not be calling any police officers as witnesses. Defendants argue that the credibility of their defense was irreparably damaged, because defendants had argued in their opening statement that the fact that only security personnel of the Tektronix plant would testify showed that this case did not involve a real threat to public order.[5]

Defendants did not contend at trial, nor did the trial court find, that the District Attorney acted in bad faith when he represented to defendants that Officer Balada was unavailable on March 16, 1981, the scheduled date of trial. When Officer Balada took the stand to testify, the trial court gave a cautionary instruction to the jury as follows:

"* * * You recall that yesterday that there was some mention about no one but Tektronix employes were going

---

[5] Defendants also claim that they were prejudiced in that they did not ask the prospective jurors about their possible bias toward police officers. However, this allegation is presented for the first time on appeal, and we need not consider it. *State v. Green,* 49 Or App 949, 621 P2d 67 (1980).

to testify. Yesterday that was the fact that the officer wasn't available and nobody had any notion or knowledge that the case was going to go over to today. Today he is available and disregard any inferences you might draw from today the witness showing up. Treat the statements made yesterday as being made in good faith."

We conclude that this instruction was sufficient to allay any prejudice to defendants. The trial court properly denied the motion for mistrial.

## MOTIONS FOR ACQUITTAL

At the close of the state's case, defendants moved for judgments of acquittal on the ground that the state failed to prove that defendants obstructed traffic on a *public* way, to-wit: S.W. Knowlton Road, as alleged in the complaint. There is no dispute that S.W. Knowlton Road meets Jenkins Road, a public highway, in a T-intersection, Knowlton Road being the vertical leg of the T. Defendants argue that the state's evidence establishes S.W. Knowlton Road to be a private road, and that, because an essential element of the crime charged is obstruction of traffic on a public way, the state's case must fail as a matter of law.

■ ■ To prevail on motions for judgment of acquittal, defendants must show that the evidence introduced is such as would not support a verdict against them. ORS 136.445. In denying the motion, the trial court found that there was evidence to support a finding that defendants were obstructing traffic on the north end of S.W. Knowlton Road and that that portion was a public way. Mark Warrington, a Tektronix security guard, testified that the Tektronix property line ran to "a few yards south of the edge of the Jenkins Road" and that "it's defined by a painted line and a sign." Photographs taken during the incident, and admitted into evidence, clearly show a painted line across, and a sign at the edge of the paved portion of Knowlton Road some yards south of the paved portion of Jenkins Road. The photographs show defendants standing north of the line. Defendants did not object to the employe's testimony or to the introduction of the photographs, nor did defendants introduce any evidence that the north end of S.W. Knowlton Road was not public property. We conclude that a jury could have found that the paved

portion of S.W. Knowlton Road upon which defendants were standing was within the public right of way of Jenkins Road and public way as contemplated by the statute. The motion was properly denied.

■ Before the case was submitted to the jury, defendants renewed their motions for judgment of acquittal on the ground that no reasonable juror could decide that defendants' conduct rose to the level of recklessness required under the statute. We disagree. Several witnesses testified that defendants caused traffic to back up. A security officer from the Tektronix plant testified that defendants were

> "stepping in front of autos and trucks. * * * There were close calls where people would have to stop suddenly. * * * I saw cars backed up 15, 20, 30 cars deep and under normal circumstances there would be 5 or 10 cars."

We conclude that the evidence was sufficient to present a jury question as to whether defendants recklessly created a risk of inconvenience, annoyance or alarm to the public as proscribed by ORS 166.025(1)(e).

As an alternative ground for their motions for judgment of acquittal, defendants argued that the state had failed to present evidence that defendants' conduct established a "clear and present danger of serious social disruption," as required by *Terminiello v. Chicago,* 337 US 1, 69 S Ct 894, 93 L Ed 1131 (1948). In *Terminiello,* defendant was convicted of violating a city ordinance forbidding any breach of the peace. The Supreme Court held that, as construed by the trial court and applied to defendant, the ordinance violated defendant's right of free speech in that it prohibited speech which stirred people to anger, invited public dispute or brought about a condition of unrest. 337 US at 5. The court in *Terminiello* was concerned with the *content* of a person's speech, as was the court in *Schenck v. United States,* 249 US 47, 39 S Ct 247, 63 L Ed 470 (1918), the first case to delineate the clear and present danger test. There, Justice Holmes stated that

> "[t]he question in every case is whether *the words used* are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent." (Emphasis added.) 249 US at 52.

■ ■ The statute in question in the present case does not purport to regulate the content of speech. The subject matter of the literature defendants were handing out was not an issue at the trial. Under these circumstances, in determining the constitutionality of the state's action in convicting defendants, the proper question is not whether defendants' free expression of speech produced a clear and present danger to the public, but whether the state is authorized to regulate defendants' conduct in exercising their freedom of expression, irrespective of the subject matter so expressed. The law is well settled that First Amendment freedoms may be regulated as to time, place and manner. *Grayned v. City of Rockford*, 408 US 104, 115, 92 S Ct 2294, 33 L Ed 2d 222 (1972). The crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time. 408 US at 116. We cannot say that the state is precluded by the Constitution from prohibiting the dissemination of literature by stopping traffic at a busy intersection. We conclude that ORS 166.025(1)(e), as applied to defendants' conduct, is constitutional as a permissible regulation of the place and manner in which persons may exercise First Amendment Rights. Defendants' motions for judgment of acquittal were properly overruled.

## JURY INSTRUCTION

■ After reading Article I, Section 8 of the Oregon Constitution and the First Amendment to the United States Constitution, the trial court gave the following instruction to the jury:

> "If you find that the defendant or defendants, or either of them, was or were engaging in conduct protected by either of these two constitutional provisions you cannot convict them or either of them of a crime, unless the conduct exceeded their peaceable rights above described and that their conduct created a clear and present danger to the motoring public."

Defendants have objected to the words "if you find * * *," contending that whether defendants' conduct was constitutionally protected was a question of law for the court to decide and not for the jury. Defendants argue that if the jury found that defendants' conduct was not constitutionally protected, the jury would never reach the clear and

present danger question. Defendants again labor under the misapprehension that clear and present danger is an issue in this case. It is not. We have determined that the statute as applied to defendants' conduct is constitutional. The only matter left for the jury to consider was whether defendants intentionally or recklessly created a risk of public inconvenience, annoyance or alarm. The instruction on clear and present danger was, therefore, superfluous, and if it accomplished anything, it created a heavier burden of proof for the state to overcome than was constitutionally mandated. Although it may have been error for the trial court to include this instruction, the error was harmless.[6]

Affirmed.

---

[6] Defendants also assign as error a ruling of the trial court overruling their objection to a leading question asked by the prosecutor of a state witness. Allowing leading questions or direct examination is within the trial court's discretion. *State v. Joseph,* 230 Or 585, 371 P2d 689 (1962); *State v. Stark,* 7 Or App 145, 490 P2d 511 (1971). There was no abuse of that discretion in this case.