Submitted December 20, 2022, affirmed April 12, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CONNOR HARRISON SNODGRASS,
*Defendant-Appellant.*

Lane County Circuit Court
21CR01817; A175753

528 P3d 1193

Defendant appeals a judgment of conviction for, among other charges, aggravated harassment under ORS 166.070(1)(c), which criminalizes propelling saliva at a police officer, where "the saliva comes into physical contact" with the officer. He assigns error to the trial court's denial of his motion for a judgment of acquittal (MJOA) on that charge. He essentially argues that evidence that he spat on an officer, where his spitting reached the officer's pants but not the officer's skin, was insufficient to establish the undefined "physical contact" element for the purpose of the related conviction. According to defendant, the term physical contact, as used in ORS 166.070(1)(c), requires contact of saliva with an officer's actual body, meaning skin contact. *Held*: As used in ORS 166.070(1)(c), the term "physical contact" could be construed to include contact of saliva where the saliva did not reach the officer's skin. Although neither the text nor the context of that statute revealed the meaning of "physical contact" as so used, the statute's legislative history indicated that the legislature meant to criminalize spitting on an officer's clothing, regardless of whether the spitting resulted in saliva touching the officer's body. Evidence that defendant propelled saliva at a police officer and that the saliva landed on the officer's pants was therefore sufficient to establish the physical contact element of aggravated harassment. The trial court thus did not err in denying defendant's MJOA.

Affirmed.

Jay A. McAlpin, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Ingrid A. MacFarlane, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jon Zunkel-deCoursey, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Defendant appeals a judgment of conviction for, among other charges, aggravated harassment (Count 1), arising from his conduct of spitting on a police officer's pants. On appeal, he assigns error to the denial of his motion for a judgment of acquittal (MJOA) on that count. He argues that evidence that his spit landed on the officer's pants is insufficient to establish the "physical contact" element for the purpose of a conviction under the applicable statute, ORS 166.070. More specifically, defendant disputes whether the undefined term "physical contact" includes contact of saliva with an officer's uniform or is limited to contact with the officer's skin. The state argues in response that the legislature intended to criminalize spitting on a police officer, regardless of whether the saliva contacts the officer's skin or uniform. We agree with the state that the legislature so intended, and accordingly conclude that the trial court did not err in denying defendant's MJOA, and therefore affirm the judgment.

We review the denial of an MJOA for legal error, including where the "challenge to the legal sufficiency of the state's evidence depends upon the meaning of the statute defining the offense." *State v. Street*, 317 Or App 1, 4, 505 P3d 425, *rev den*, 369 Or 705 (2022). "Then, based on the proper construction of the statute, we view the evidence in the light most favorable to the state to determine whether a rational factfinder could have found the elements of the offense beyond a reasonable doubt." *Id*. (internal quotation marks and citation omitted). With those standards in mind, we set forth the relevant facts, which are undisputed.

Officers Jones and Palki went to a grocery store in response to a report that defendant had taken a case of beer without paying and was drinking the beer outside the store. During the officers' interaction with defendant, he spat at them three times, and one of those times defendant's saliva landed on Jones's pants. That conduct became the basis for the state to indict defendant for aggravated harassment. At trial, Jones testified that defendant spat at him and that some saliva landed on his left pant leg, but that no saliva

contacted Jones's skin, eyes, or mouth. Defendant did not dispute that his saliva hit Jones.

At the close of evidence, defendant moved for a judgment of acquittal, arguing that the evidence did not establish that any saliva came into physical contact with Jones within the meaning of ORS 166.070(1)(c). In defendant's view, the term "physical contact" in the statute requires that saliva make contact with a person's body, either through clothes or through direct contact, as opposed to contact only with clothing.

The trial court denied defendant's motion. It concluded that the term "physical contact" in ORS 166.070(1)(c) addressed "the saliva and not the body of the subject" and that "[t]he legislature would have written it differently if they meant something other." The court further concluded that "physical contact" included "a limited extended area of bodily integrity which would include clothing."

In his appeal of the trial court's ruling, defendant maintains his argument that evidence that saliva hit Jones's pants but did not penetrate the clothing to reach Jones's body is insufficient to establish that his saliva came into physical contact with Jones under ORS 166.070(1)(c). He asserts that the term "physical contact" as used in the statute means contact with a person's body, directly or through clothing. The state contends that the legislature intended the statute to prohibit spitting on a public safety officer, regardless of whether the saliva contacts the officer's skin or their uniform.

To address the parties' arguments, we must engage in our usual mode of statutory construction, first considering the text and context of ORS 166.070(1)(c), and then examining any legislative history to discern what the legislature intended. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

We thus begin by reviewing the text and context of ORS 166.070(1)(c), which provides:

"(1)   A person commits the crime of aggravated harassment if the person, knowing that the other person is a:

"*****

"(c)    Public safety officer, intentionally propels saliva at the public safety officer, and the saliva comes into physical contact with the public safety officer, while the public safety officer is acting in the course of official duty or as a result of the public safety officer's official duties."

The legislature has not defined the term "physical contact" in ORS 166.070(1)(c) or any related provision. When the legislature has not defined a statutory term, but the term includes "words of common usage," we examine its "plain, natural, and ordinary meaning" to determine what that term may mean, which can be accomplished by reference to a contemporary dictionary. *State v. Castillo*, 313 Or App 699, 705, 495 P3d 191 (2021) (internal quotation marks omitted). If a term has more than one meaning, the context of its use guides our determination of which of multiple meanings the legislature intended. *State v. Fries*, 344 Or 541, 546, 185 P3d 453 (2008). A statute's context "includes other provisions of the same or related statutes, the pre-existing statutory framework within which the statute was enacted," and prior decisions interpreting the relevant statutory wording. *Ogle v. Nooth*, 355 Or 570, 584, 330 P3d 572 (2014).

Here, defendant relies on three main arguments. He first argues that the only applicable dictionary definitions for "physical" and "contact" suggest that physical contact, as used in ORS 166.070(1)(c), means an actual meeting between saliva and an officer's skin, directly or through clothing. *See Webster's Third New Int'l Dictionary* 1706 (unabridged ed 2002) (defining the term "physical" as, among other definitions, "of or relating to the body"); *id.* at 490 (defining the term "contact" as, among other definitions, "union or junction of body surfaces: a touching or meeting"). Second, defendant contends that the absence of such a physical contact requirement in ORS 166.070(1)(a) and (b)—which punish the act of propelling "blood, urine, semen, feces or other dangerous substance" at staff members and at public safety officers—indicates that the legislature used the term physical contact in ORS 166.070(1)(c) to distinguish two different types of conduct. According to defendant, while sections (a) and (b) of the statute address simply propelling dangerous

substances and risking contact with an officer's clothing, section (c) addresses propelling saliva that actually reaches an officer's body. Third, defendant relies on the definition of harassment under the 1971 criminal code, as discussed in two cases, to argue that saliva that connects with a person's clothing but not with the person's body does not make physical contact with the person.[1] *See State v. Keller*, 40 Or App 143, 145, 594 P2d 1250 (1979) (construing "offensive physical contact" for purposes of ORS 166.065(1)(a) (1971)); *State v. Sallinger*, 11 Or App 592, 597-98, 504 P2d 1383 (1972) (same).

We find defendant's arguments unpersuasive. Neither of defendant's proposed dictionary definitions for the terms "physical" and "contact," nor any of the other multiple dictionary definitions related to those terms, conclusively explains whether physical contact includes contact with clothing or only direct contact with the skin for the purpose of ORS 166.070(1)(c). Also, contrary to defendant's suggestion, the absence of a physical contact requirement in ORS 166.070(1)(a) and (b) is not an indication of what is required for "physical contact" in ORS 166.070(1)(c).

Moreover, the cases on which defendant relies do not help. Although both *Sallinger* and *Keller* consider "offensive physical contact" for the purpose of harassment to include contact that relates to contacting the body directly—such as striking, shoving, kicking, grabbing—neither case explains the meaning of physical contact as requiring direct contact with skin. As defendant himself recognized, in *Keller* we clarified that our decision in *Sallinger* was not intended to be a "comprehensive enumeration of the acts prohibited" by the harassment statute. *Keller*, 40 Or App at 145. Indeed, contrary to defendant's argument that physical contact requires contact with skin, *Keller* suggests that offensive physical contact is *not* limited to flesh-to-flesh contact. Ultimately, neither the text nor context of ORS 166.070(1)(c) clarifies whether the legislature intended to criminalize spitting on an officer's clothing.

---

[1] ORS 166.065(1)(a) (1971), *amended by* Or Laws 1987, ch 806, § 3, provided that "[a] person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he * * * [s]ubjects another to offensive physical contact."

We turn to the legislative history. *Gaines*, 346 Or at 172. Both parties rely on discussions during the Senate and House Committee hearings to support their opposing arguments. Defendant argues that, because legislators' comments indicate that the legislature enacted ORS 166.070(1)(c) based on concerns regarding the health and safety of police officers, his proposed interpretation of physical contact, which requires actual body contact, is consistent with the statute's legislative history. In opposing that argument, the state points to remarks by legislators suggesting that the legislature also intended to forbid spitting on an officer's clothing.

As we explain below, we agree with the state that the legislative history of ORS 166.070(1)(c) indicates that "physical contact" is meant to require contact with the body but includes clothing. The legislature added the physical contact provision to ORS 166.070(1)(c) through Senate Bill (SB) 482 (2013) to criminalize spitting on a public safety officer. *See* Or Laws 2013, ch 477, § 1 (enacting ORS 166.070(1)(c)). The prior version of ORS 166.070, which punished propelling certain "dangerous substances" at corrections officers, including "saliva," did not include public safety officers and did not contain a physical contact requirement. ORS 166.070 (2009), *amended by* Or Laws 2013, ch 477, § 1. As introduced, SB 482 also did not contain the term physical contact, but simply provided that "[a] person commits the crime of aggravated harassment [(a Class C felony)] if the person *** propels saliva, blood, urine, semen or feces at [a] public safety officer." SB 482 (2013) (as introduced). However, the legislature later amended the text of SB 482 to include the physical contact provision. The discussions regarding that amendment provide the basis for our conclusion that, contrary to defendant's argument, spitting saliva on an officer's pants can constitute aggravated harassment.

We begin by explaining the relevant parts of those discussions, which occurred during Judiciary Committee hearings in both houses. During the first relevant hearing in the Senate, a representative from the American Civil Liberties Union (ACLU), Becky Straus, stated:

> "[I]n terms of the language of the bill, I'm a little wor-
> ried about a broad sweep beyond the target harm here. * * *
> [W]hat I'm hearing which is certainly important behavior
> * * * particularly someone who's carrying a disease, spit-
> ting more likely in the face of an officer, so as such, trans-
> mit that disease to the officer. I think that's the harm that
> we should get at. I'm worried that the bill right now sweeps
> much more broadly than that. I think the current language
> right now is propel at. I'm worried that someone even spit-
> ting on the ground could be caught up in this. So, if there's
> anything we can do to talk about narrowing that."

Audio Recording, Senate Committee on Judiciary, SB 482,
Mar 5, 2013, at 21:28 (statements of ALCU representative
Becky Straus), https://olis.oregonlegislature.gov (accessed
Mar 15, 2023).

The Senate Committee on Judiciary Chair, Senator
Prozanski, replied:

> "I reviewed the statute again and as [Straus] stated
> on the record, it does state basically that an individual is
> guilty or would be guilty if they are propelling *at* the indi-
> vidual. So, I'm gonna look at that term *at* versus *on*; I think
> that's something that we need to consider. * * * [I]t does
> require the act * * * being intentional. * * * [R]ight now, for
> an officer to be spat on, the charge would be harassment,
> which is a Class B misdemeanor. For aggravated harass-
> ment * * * to be a Class C felony, it has to be one of these
> two categories, with those types of actions. If we modified
> the language that's currently there and made it where
> that type of substance had to strike the individual, that
> would be the aggravated. And then if a prosecutor wanted
> to charge someone to say someone intentionally throws it
> at them or spits at them but misses them, then it would be
> an attempt. An attempt would drop it down one grade to a
> Class A misdemeanor."

*Id.* at 23:18 (comments of Sen Floyd Prozanski) (emphases
added).

At this point, Senator Kruse, comparing the pro-
posed change to SB 482 with ORS 166.070(1)(b), which pun-
ishes the act of propelling "blood, urine, semen or feces at
* * * public safety officer[s]" but does not require that act

to be intentional or that the substance strikes the officer, stated:

> "I would submit that these other bodily fluids—even if they miss, that's kind of different than spitting. \*\*\* I do think there's a differentiation. So, I'm not sure that we lower for these other things. [W]e just make sure that spitting is kind of separated."

*Id.* at 25:28 (statements of Sen Jeff Kruse). In response to the comments above, the Senate Judiciary Committee, at a later hearing, discussed two proposed amendments to SB 482: the -1 amendment, which included the physical contact requirement, and the -2 amendment, which did not.[2] The committee ultimately chose the -1 amendment. Prior to making that decision, committee counsel Michael Schmidt introduced the -1 amendment as follows:

> "There is a dash one amendment, which makes it clear that the legal conduct would \*\*\* be, if you propelled saliva it came into physical contact with the public safety officer. So *not just kind of flinging it at* but actually *landing on.*"

Audio Recording, Senate Committee on Judiciary, SB 482, Apr 9, 2013, at 2:10 (comments of Senate Committee on Judiciary Counsel Michael Schmidt), https://olis.oregonlegislature.gov (accessed Mar 15, 2023) (emphases added). Addressing the substance of the amendment, a witness supporting SB 482 asked, "[I]n regards to the dash one amendment, \*\*\* the [physical] contact, would that be skin contact or clothing contact?" *Id.* at 3:35 (question by witness, paramedic Greg Stoll). In response to Stoll's question, Chair Prozanski responded, "Contact is contact, whether you got clothes on or you don't have clothes on. You'd have clothes on, I would think." *Id.* at 3:43 (comment of Sen Floyd Prozanski).

At the first House Committee on Judiciary hearing, counsel from the Oregon Criminal Defense Lawyers

---

[2] The -1 amendment provided that a person would commit aggravated harassment if the person "intentionally propels saliva at the public safety officer, and the saliva comes into physical contact with the public safety officer." SB 482 (2013), -1 amendments (Mar 8, 2013). The -2 amendment, which was not adopted, provided that aggravated harassment would include conduct in which a person propels saliva at an officer, "know[ing] or believe[ing] that the person has a dangerous communicable disease." SB 482 (2013), -2 amendments (Apr 1, 2013).

Association expressed the following concerns about to SB 482:

> "[I]n 2009, \*\*\* adding what is now subsection (b) [of ORS 166.070], so making it unlawful for someone to knowingly propel blood, urine, semen, or feces at a public safety officer out in the field, \*\*\* not that there was consensus [but] the end result was \*\*\* to exempt saliva from that, and it did come down to the question of, '*Do we really want to felonize spitting at someone?*' \*\*\* I do point out that the debate too in 2009 was really if you spit on an officer's boot, is it a felony? And, as this is written—*this amendment \*\*\* says that they must intentionally propel saliva at the officer and come into physical contact with the officer, but it doesn't mandate that the contact be in an area that would subject the officer to infection.* \*\*\* I don't know yet that this is still tight enough. I think it's a serious question for the committee—Is spitting something that should be a felony?"

Audio Recording, House Committee on Judiciary, SB 482, May 6, 2013, at 56:40 (comments of Oregon Criminal Defense Lawyers Association representative Gail Meyer), https://olis.oregonlegislature.gov (accessed Mar 15, 2023) (emphases added).

During the second House Committee on Judiciary hearing on SB 482, Representative Brent Barton—voting against the bill—stated:

> "I think a Class C felony is a big deal. That is, in theory, \*\*\* punishable by more than a year in prison. \*\*\* [T]his bill just talks generally *spitting on*, and I feel like it's poorly defined. \*\*\* [P]otentially, spitting on an officer's boots could land someone in jail for a year. \*\*\* [W]hen you have that framework, I'm concerned that it might lead to potentially arbitrary or unbalanced application of it. \*\*\* [C]ertain political minorities and other kind of high-tension social groups might end up bearing the burden of this prosecution more than others. \*\*\* [T]hat civil liberties implication concerns me."

Audio Recording, House Committee on Judiciary, SB 482, Apr 29, 2013, at 7:47 (comments of Rep Brent Barton), https://olis.oregonlegislature.gov (accessed Mar 15, 2023) (emphasis in original). During that same hearing, Representative Andy Olson, voting in favor of SB 482, stated:

> "I appreciate what Representative Barton was saying, given the illustration of spitting on the boots as it would apply toward this one and what the reaction would be then on behalf of the officer. \* \* \* I have been spat on a few times in my career; not once has it has ever been on the boots; it has always been toward the upper body toward the face, and I think that's what this bill is designed for \* \* \*."

*Id.* at 10:28 (comments Rep Andy Olson).

We conclude, based on this history and on the legislature's ultimate decision to pass SB 482 regardless of concerns about whether it made it a felony to engage in conduct such as spitting on an officer's boots, that the legislature intended ORS 166.070(1)(c) to include spitting on an officer's clothing. Although the concerns expressed by Representative Barton, in voting against it, that SB 482 was "poorly defined," and could lead to "arbitrary application" strike us as valid, we conclude that the legislature intended ORS 166.070(1)(c) to apply when saliva reaches an officer's clothes. As the discussions of Senate Committee on the Judiciary demonstrate, the bill was intended to separate the punishable and nonpunishable conduct by excluding only conduct where the saliva "pass[ed] by" versus conduct where the saliva "land[ed] on" the officer. Thus, we conclude that "physical contact" in ORS 166.070(1)(c) includes the spitting of saliva on an officer's clothing, regardless of whether the saliva touches the officer's skin.

Having determined that ORS 166.070(1)(c) applies to conduct where a defendant's saliva reaches an officer's uniform, we must determine whether a rational factfinder could have found beyond a reasonable doubt that defendant's conduct of spitting on Jones was sufficient to support a conviction under ORS 166.070(1)(c). *Street*, 317 Or App 1. Viewing the "evidence in the light most favorable to the state" under *Street*, we conclude that a jury could have found beyond a reasonable doubt that defendant propelled saliva at Jones and that the saliva came into physical contact with Jones. Considering that the other elements of the offense are undisputed on appeal, we conclude that the trial court did not err in denying defendant's MJOA.

Affirmed.