Submitted March 17, affirmed July 12, petition for review denied December 21, 2023 (371 Or 771)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSHUA CHARLES MOORE,
*Defendant-Appellant.*

Douglas County Circuit Court
20CR50577, 21CR06898;
A176448 (Control), A176449

533 P3d 1123

Defendant was convicted by a jury of second-degree disorderly conduct for obstructing traffic after an incident during which he walked down the middle of the road at night while intoxicated. Defendant appeals the trial court's denial of his motion for a judgment of acquittal on the charge, arguing that the state failed to adduce sufficient evidence that he "obstructed traffic" as required under ORS 166.025. *Held*: A reasonable factfinder could conclude that defendant created a sufficient risk of public inconvenience, annoyance, or alarm to support a conviction. The state was not required to prove that the obstruction was of any certain duration or any number of people were actually affected. A member of the public driving behind defendant would have been required to enter the oncoming traffic lane or drive on the shoulder to get around him and would reasonably have been alarmed by attempting to pass him.

Affirmed.

William A. Marshall, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Matthew Blythe, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

Defendant was convicted of interfering with a peace officer, ORS 162.247 (Count 1); harassment, ORS 166.065 (Count 2); and second-degree disorderly conduct, ORS 166.025 (Count 3), after an incident during which he walked down the middle of a road while intoxicated. On appeal, defendant first assigns error to the trial court's denial of his motion for a judgment of acquittal (MJOA) on Count 3, arguing that the state failed to adduce sufficient evidence that he "obstructed traffic" as required under ORS 166.025. We conclude that the trial court did not err in denying defendant's MJOA. Second, he assigns error to the trial court's failure to instruct the jury that it must agree on what conduct constituted the offense of interfering with a peace officer. We summarily reject that argument, noting only that, even if the trial court plainly erred in failing to give a concurrence instruction, we would not exercise our discretion to correct the error because it was harmless. Accordingly, we affirm.

On review of the denial of an MJOA, we view the facts in the light most favorable to the state. *State v. Street*, 317 Or App 1, 4, 505 P3d 425, *rev den*, 369 Or 705 (2022). Late one evening, a couple called the police after they discovered defendant looking into an open door of their SUV. Defendant's hair was "a mess" and he was wearing only camouflage pajama pants with no shirt or shoes. After the couple confronted defendant, he walked away and then began running down the street. Upon responding to the couple's call, a police officer found defendant walking down the middle of the northbound lane of a two-lane road with a truck following behind him. The officer, driving a marked patrol SUV, passed defendant and the truck going south in the southbound lane, turned around, approached defendant from behind in the northbound lane, and turned on his lights. The officer testified that the truck that had been behind defendant was no longer at the scene, although it is unclear from trial testimony precisely how it left.

Defendant began running towards the patrol SUV. At that point, the officer got out of the vehicle. The officer attempted to get defendant out of the road, but defendant

repeatedly returned to the middle of the northbound lane. Eventually, the officer tased and arrested defendant. Upon being taken into custody, defendant stated that he had taken a highly concentrated form of THC and was in "panic mode."

At the close of the state's case, defendant orally moved for a judgment of acquittal, arguing that the evidence did not establish that he was obstructing traffic within the meaning of ORS 166.025(1)(d), which provides that "[a] person commits the crime of disorderly conduct in the second degree if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person *** "[o]bstructs vehicular or pedestrian traffic on a public way." In defendant's view, the term "obstructing traffic" in the statute requires that there be some actual traffic to impede. According to the defense, because there was only one vehicle, the truck that may have been intentionally following him, he was not obstructing traffic. The trial court denied defendant's motion, concluding that, viewing the evidence in the light most favorable to the state, the effect that defendant's conduct had on the one vehicle was sufficient to allow the question to go to the jury. The jury convicted defendant.

In his first assignment of error, defendant argues that "obstructed" traffic within the meaning of ORS 166.025(1)(d) requires conduct that significantly blocks or impedes the flow of vehicular traffic. According to defendant, "a mere momentary delay or a slight adjustment to another vehicle's trajectory" is insufficient to constitute an obstruction. Relying on the culpable mental state in ORS 166.025(1)(d), "intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof"; other methods of committing disorderly conduct; legislative history; and our case law discussed below, he argues that the "extent and duration of the obstruction must have been of such severity that it had a genuine tendency to provoke a breach of the peace."[1] Defendant contends that evidence that

_____

[1] "Public inconvenience, annoyance or alarm" is modern terminology for what was at common law termed a "breach of the peace." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report

he walked down a two-lane road being followed by a single truck, that the police officer was able to pass both defendant and the vehicle in the other lane, and that the truck was able to leave the road once the police officer turned around, is insufficient for a reasonable factfinder to conclude that defendant "obstructed traffic." Therefore, defendant asserts, the trial court erred when it denied his MJOA.

We review the denial of an MJOA for legal error, including where the "challenge to the legal sufficiency of the state's evidence depends upon the meaning of the statute defining the offense." *Street*, 317 Or App at 4. To address the parties' arguments, we engage in our usual mode of statutory construction to determine what the legislature intended, first considering the text and context of ORS 166.025(1)(d). *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We may then also consider the legislative history of the statute under examination and give it the weight that we consider to be appropriate. ORS 174.020(3); *Gaines*, 346 Or at 171-72. "Then, based on the proper construction of the statute, we view the evidence in the light most favorable to the state to determine whether a rational factfinder could have found the elements of the offense beyond a reasonable doubt." *Street*, 317 Or App at 4 (internal quotation marks and citation omitted).

When the legislature has not defined a statutory term, but the term includes "words of common usage," we examine its "plain, natural, and ordinary meaning," which is usually accomplished by reference to a contemporary dictionary. *State v. Castillo*, 313 Or App 699, 705, 495 P3d 191 (2021) (internal quotation marks omitted). If a term has more than one meaning, the context of its use guides our determination of which of multiple meanings the legislature intended. *State v. Fries*, 344 Or 541, 546, 185 P3d 453 (2008). A statute's context "includes other provisions of the same or related statutes, the pre-existing statutory framework within which the statute was enacted," and prior decisions interpreting the relevant statutory wording. *Ogle v. Nooth*, 355 Or 570, 584, 330 P3d 572 (2014).

---

§ 220 (July 1970) ("[The disorderly conduct statute] is directed at conduct causing what the common law termed a breach of the peace.").

ORS 166.025(1)(d) provides:

"A person commits the crime of disorderly conduct in the second degree if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person:

"* * * * *

"(d)   Obstructs vehicular or pedestrian traffic on a public way[.]"

The legislature has not defined the term "obstructs" in ORS 166.025(1)(d), and we have not expressly construed the term, although we have implicitly addressed its meaning in prior cases as discussed below. Because ORS 166.025 does not define "obstructs," we will first look to the ordinary meaning of the term. *Gaines*, 346 Or at 171-72. We agree with the parties that the following is the most likely definition intended by the legislature: "to block up : stop up or close up : place an obstacle in or fill with obstacles or impediments to passing <traffic ~*ing* the street> <veins ~*ed* by clots>." *Webster's Third New Int'l Dictionary* 1559 (unabridged ed 2002).

However, defendant further argues that "obstructs" also includes temporal and severity requirements, requiring a prolonged and severe blockage. He asserts that the legislature intended "obstructing" vehicular traffic under ORS 166.025(1)(d) to apply to persons whose conduct physically blocks up a street to a degree that risks causing a breach of the peace or, in modern language, public inconvenience, annoyance or alarm.[2]

We agree that a plain reading of the statute requires that the conduct (obstruction) must, at minimum, create a risk of causing public inconvenience, annoyance or

_____

[2] Defendant also argues that the legislature only intended to cover "'*intentional* obstructions' as opposed to mere negligent or reckless obstructions," meaning that the severity of the obstruction must be commensurate with a breach of the peace. (Emphasis in original.) However, that argument depends on a legal issue that is not before us—namely, the statutorily required culpable mental state of disorderly conduct. Defendant did not argue at trial or in his MJOA, and does not argue on appeal, that he did not possess the requisite culpable mental state. As a result, we reject that argument.

alarm.[3] Otherwise, the conduct element of the offense would not be satisfied. But we disagree with defendant that the cases he relies on are sufficiently similar or support his construction of "obstructs" as including his proposed temporal requirement.

Defendant points to *City of Eugene v. Lee*, 177 Or App 492, 34 P3d 690 (2001), to support his claim that causing a "mere redirection" is insufficient to establish obstruction, but that case is distinguishable. In *Lee*, the defendant, a street preacher, was convicted of disorderly conduct under a provision of the Eugene City Code identical to ORS 166.025(1)(d). *Id.* at 494. The defendant was loudly preaching at a pedestrian mall, calling some passersby offensive terms and causing a crowd to gather around him on the south side of the mall. *Id.* at 494-95. We reversed the defendant's conviction, determining that because pedestrians who did not want to stop and listen could walk past the crowd unimpeded, and the defendant was engaged in constitutionally protected expressive activity, the disorderly conduct provision could not constitutionally be applied to that defendant under those circumstances. *Id.* at 503.

Defendant's reliance on *Lee* is misplaced. First, the defendant in *Lee* brought an as-applied constitutional challenge to his conviction because he was engaged in a protected activity. Here, defendant was not engaging in any constitutionally protected activity but was instead walking down the middle of the road at night. Second, although the pedestrians in *Lee* had to slightly alter their path, they were not forced into an area not intended for, or potentially dangerous to, pedestrian traffic. Instead, they could simply walk around where the defendant and the crowd were gathered unimpeded and without exiting the pedestrian mall. Here, on the facts presented, vehicles would have been forced to

---

[3] Because ORS 166.025 was derived from a New York statute, defendant relies on a New York Court of Appeals case to argue that defendant's conduct must threaten "public order" in a manner distinct from a personal clash between individual disputants, and that the conduct must create a risk of escalation into a public problem. *People v. Pritchard*, 27 NY2d 246, 248-49, 265 NE2d 532 (1970). Even assuming *arguendo* that we would construe the Oregon statute in that way, on the facts before us viewed in the light most favorable to the state, there is no indication that defendant was engaged in a personal clash with another specific individual.

stop, travel into the oncoming traffic lane, or drive onto the shoulder to get around defendant.

Defendant also relies on *State v. Hund*, involving a group of environmental activists who were convicted of disorderly conduct for preventing a logging company's vehicles from entering a forest to remove timber. 76 Or App 89, 91-92, 708 P2d 621 (1985), *rev den*, 300 Or 477 (1986). Although the group stated that they would permit any traffic other than the logging company's vehicles to pass, we rejected their argument that the trial court should have *sua sponte* granted a judgment of acquittal and affirmed their convictions, explaining that

> "they would necessarily have had to *stop that traffic temporarily* in order to determine whether it could move through their blockade. Although the conclusion is not compelled, a rational trier of fact could have determined that defendants' acts *could cause public inconvenience* \*\*\*. That is sufficient to justify the jury's verdict."

*Id.* at 93 (emphases added). Hence, in certain circumstances, stopping traffic even temporarily has sufficient potential to cause public inconvenience within the meaning of ORS 166.025(1)(d). *Hund* therefore does not support defendant's proposed definition of "obstructs" as including a temporal boundary.

Defendant also relies on *State v. Horn*, in which we concluded that testimony that the defendants stepped into the road in front of vehicles and that traffic had backed up was sufficient for the trial court to deny the defendants' MJOA and for the jury to find that the defendants obstructed traffic. 57 Or App 124, 130, 643 P2d 1338 (1982). Although we pointed to testimony regarding the back up of traffic as evidence sufficient to present to the jury, we did not require any specific extent of obstruction or number of vehicles in so concluding. *Id.*

To the extent that defendant intends to argue that, because his actions only affected one member of the public, the truck following him, and because it is unclear whether the truck was intentionally following him, he could not have caused inconvenience to the public, our prior decisions have clearly rejected that argument. In *State v. Willy*, the

defendants were convicted by a jury of disorderly conduct for making unreasonable noise for firing guns at night in their neighborhood. 155 Or App 279, 282, 963 P2d 739 (1998). At that time, existing case law held that evidence of actual inconvenience, annoyance, or alarm to a substantial number of people was required to prove disorderly conduct, and the defendants argued that the state did not prove that their conduct actually annoyed or alarmed more than two people. *Id.* at 283. We overruled the existing case law, explaining that "[t]here is no support in the language of ORS 166.025(1) *** that the statute requires proof of actual public inconvenience, annoyance or alarm or that the 'public' nature of inconvenience, annoyance or alarm is determined by reference to the number of persons actually so affected." *Id.* at 287.

Viewing the facts in the light most favorable to the state, a reasonable factfinder could conclude that by walking in the middle of one lane of a two-lane road at night, defendant created a sufficient enough risk of public inconvenience, annoyance, or alarm to support a conviction for disorderly conduct by obstructing traffic. Although defendant did not block all lanes of traffic, he correctly acknowledges that an individual need not entirely block all passage to have "obstructed." Additionally, although there was only one vehicle on the road at that time, the state need not prove actual public inconvenience, annoyance, or alarm to any specific number of people. Further, not only would a member of the public driving behind him be required to get around him by entering the oncoming traffic lane or driving on the shoulder, it is reasonable to infer from the circumstances that a member of the public driving behind defendant would be alarmed about passing him at all. He was walking at night, in the dark, in the middle of the northbound lane, and did not move out of the road when a vehicle approached him. Reasonable members of the public observing defendant at that time in that state could be alarmed about whether it was safe for themselves and defendant to attempt to drive around him.

Accordingly, viewing the evidence in the light most favorable to the state, we determine that a rational factfinder could have found beyond a reasonable doubt that defendant

committed the crime of disorderly conduct by obstructing traffic and the trial court did not err when it denied defendant's MJOA.

Affirmed.